Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* pending)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff Jonathan Avery, individually, and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN AVERY, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EXCHANGE VACATION CLUB, a California corporation, and GLOBAL EXCHANGE DEVELOPMENT CORP., a Nevada corporation, RESORT VACATIONS, INC., a Nevada corporation, and DOES 1-10, inclusive,<br><br>Defendants. | No. 8:23-cv-02071<br><br>**CLASS ACTION COMPLAINT FOR**<br>**(1) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c) AND**<br><br>**(2) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200 (d).**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS-ACTION COMPLAINT</u>

Plaintiff, Jonathan Avery ("Avery" or "Plaintiff") individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendants Global Exchange Vacation Club ("GEVC"), Global Exchange Development Corp. ("GEDC") Resort Vacations, Inc., ("RVI") and Does 1 to 10 (hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants.  Defendants violated Plaintiff and the putative class-members' rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry.  Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq.*

## BACKGROUND ON THE TCPA

2.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights—specifically, the right to be left alone from unwanted telemarketing calls.

3.      A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq*., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5.      Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and

conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7.    The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1);  47 C.F.R. §§  64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

8.    Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9.    In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10.    The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over the TCPA claims in

this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. This Court has personal jurisdiction over Defendants which are headquartered and incorporated, and conduct business, in the State of California.

13. Defendants maintain their headquarters within this District in the State of California.

14. Accordingly, personal jurisdiction exists, and venue is proper under 28 U.S.C. § 1391(b)(1).

## PARTIES

15. Plaintiff Jonathan Avery is an individual who resides in Texas.

16. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

17. Defendant Global Exchange Vacation Club ("GEVC") is a California corporation which registered 27405 Puerta Real, Suite 100, Mission Viejo, California 92691 as its address with the California Secretary of State.

18. GEVC is the homeowner association for a multi-location time-share plan with accommodations in locations worldwide. GEVC holds (and sells) various real estate interests including timeshares.

19. Defendant Global Exchange Development Corp. ("GEDC") is a Nevada corporation which registered 30448 Rancho Viejo Road, Suite 150, San Juan Capistrano, California 92675 as its address with the California Secretary of State.

20. GEDC manages GEVC, and uses telemarketing to market GEVC's timeshares via vendors.

21. Defendant Resort Vacations, Inc. ("RVI") is a Nevada corporation which registered 27405 Puerta Real, Suite 100, Mission Viejo, California 92691 as

its address with the California Secretary of State. RVI is a real estate brokerage which participates with GEDC in selling GEVC's timeshares.

22.    Each Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

23.    Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

24.    Plaintiff is informed and believes, and therefore alleges, that all Defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

25.    Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

26.    All Defendants, including GEVC, GEDC, RVI and Does 1 through 10, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of GEVC and/or GEDC and/or RVI, the allegations

shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

## FACTUAL ALLEGATIONS

27.    Defendants use telemarketers to solicit business from potential consumers across the country, including in California, to purchase real estate interests, including timeshares held by GEVC.

28.    On information and belief, GEVC and RVI are simply corporate shells used to hold and maintain timeshare interests, and have few (if any) employees, and little other property, operations, or business functions. GEDC is responsible for operating and managing GEVC and RVI.

29.    On information and belief, GEDC employs, controls, and supplies the individual natural persons—the officers, employees, and agents—who actually operate and control GEVC and RVI's day-to-day business. GEDC supplies the personnel who physically execute contracts for GEVC and RVI, operate the business of marketing to, registering and enrolling timeshare owners in GEVC's system, and perform any other aspect of GEVC's business that requires human involvement.

30.    Because Defendants maintain the same natural persons as their agents, officers, employees, and other personnel who operate their businesses in common, and who are responsible for Defendants' conduct, it is not possible to attribute the actions of these individuals to one Defendant without also attributing them to all Defendants.

31.    Defendants market GEVC's timeshares through aggressive, illegal, outbound telemarketing campaigns. These telemarketing campaigns are conducted for Defendants' benefit and on their behalf. Defendants and their telemarketers initiate telemarketing calls from offshore call centers to telephone numbers on the Do-Not-Call registry, assess the recipient's interest in GEVC's timeshares, then

transfer the recipients to call centers that use GEVC's name and are operated by Defendants' actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers to arrange in-person sales presentations at Defendants' offices. On information and belief, Defendants have granted their telemarketers access to their sales and enrollment systems and use of GEVC's name, and therefore granted the telemarketers their apparent authority.

32.     Defendants systemically fail to honor the national Do Not Call List. Defendants do not have express consent to call telephone users whose telephone number is on the Do Not Call List.

33.     Defendants also use misleading or inaccurate caller identification information, including "spoofed" telephone numbers (that is, replacing the actual originating number displayed to recipients caller ID systems—which could be used to reliably identify the vendors' calls—with a falsified ostensible outgoing telephone number).[1]

34.     Defendants' use of different trade names helps them to attribute

---

[1] According to the FTC, technological advancements (like Voice Over Internet Protocol (VoIP)) have increased the number of illegal telemarketing calls made to telephone numbers on the National Do Not Call Registry and allowed telemarketers to evade detection by "spoofing" the caller ID information that accompanies their calls:

> VoIP technology allows callers, including law-breakers, to make higher volume of calls inexpensively from anywhere in the world…Technological developments also allow illegal telemarketers to easily fake the caller ID information that accompanies their calls, which allows them to conceal their identity from consumers and law enforcement. In 2017, reports of "neighborhood" caller ID spoofing, where the caller displays a caller ID number with the same area code and exchange as the called party, have also increased. Further, many telemarketers use automated dialing technology to make calls that deliver prerecorded messages (commonly referred to as "robocalls", which allow violators to make very high volumes of illegal calls without significant expense. The net effect of these technological developments is that individuals and companies who do not care about complying with the Registry or other telemarketing laws are able to make more illegal telemarketing calls cheaply and in a manner that makes it difficult for the FTC and other law enforcement agencies to find them.

Federal Trade Commission, Biennial Report to Congress, Under the Do Not Call Registry Fee Extension Act of 2007: The Operation of the National Do Not Call Registry During Fiscal Year 2016 and Fiscal Year 2017 3 (Dec. 2017), https://www.ftc.gov/reports/biennial-report-congress-under-do-not-call-registry-fee-extension-act-2007-operation.

particular calls to specific telemarketing campaigns, but makes it difficult for consumers to do the same or even identify Defendants. Defendants' use of spoofing entices recipients to answer telephone calls that they would not otherwise answer, and makes it difficult to attribute particular calls to Defendants. These practices allow Defendants to evade accountability for their telemarketing activities, and make it difficult for call recipients to avoid or otherwise respond to Defendants' calls (for instance, asking to be placed on Defendants' own Do Not Call list). Call recipients are only able to avoid Defendants' unwanted calls if they risk missing *wanted* calls, and cannot identify which companies they have instructed not to call them.

35.    Nonetheless, Defendants made, and continues to make, these telemarketing calls to consumers without their consent. Defendants ratify the telemarketers' conduct by accepting transfers and referrals of call recipients and payments from the consumers who purchase GEVC's timeshares, and by paying commission to these telemarketers, despite knowing that the calls resulting in the enrollment violated the TCPA. Defendants have knowingly and actively accepted money that originated through illegal telemarketing calls, and paid and/or approved payment of commissions to telemarketers for such calls.

36.    To the extent Defendants used any third-party telemarketers to make any calls to consumers, they were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of Defendants, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants.

37.    Defendants operate, manage, monitor, and/or control these telemarketing campaigns through the data collected about the telemarketing campaigns, and the feedback Defendants give to the telemarketers (including,

ultimately, the commissions Defendants pay to their telemarketers). Defendants are legally responsible for ensuring they and/or any third-party telemarketers complied with the TCPA, even if they themselves did not itself make the calls. Defendants are vicariously liable for their agents' TCPA violations. Defendants not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions.

38.     There is no material distinction between telemarketing calls made by Defendants and/or by call centers who are technically third parties. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification").

39.     At all times relevant hereto, Plaintiff, Jonathan Avery, owned a cell phone, the number for which was (469) XXX-3933.

40.     Plaintiff registered that cell phone number on the Federal Do Not Call Registry in May of 2020 in order to obtain solitude from invasive and irritating telemarketing calls.

41.     At all times relevant hereto, Avery used his cell phone primarily for

residential purposes.

42.     Avery never provided his telephone number to Defendants or their agents for any purpose whatsoever. Defendants and their agents did not otherwise obtain Avery's prior express consent to make telemarketing calls to his telephone number. Defendants did not call to collect an existing obligation, and Avery did not request Defendants to call (and, indeed, he was not aware of Defendants prior to these calls). Defendants never had valid consent to call Avery. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller").

43.     Between July 1, 2021, and July 8, 2022, Defendants made at least ten (10) solicitation calls to Avery's cell phone soliciting timeshare interests.

44.     The first call that took place on July 1, 2021.  In that call, Avery engaged with the calling party in order to identify the calling party and learned it was GEVC because the calling party attempted to schedule an appointment at a GEVC center with Mr. Avery and his wife.

45.     The calling party told Avery to appear for an in person showing at 3225 West Airport Freeway, Suite 100, Irving, Texas, which is a GEVC location.

46.     In October 2021, Mr. Avery sent written communication to GEVC, which, inter alia, informed GEVC that the call was unlawful and in violation of the TCPA.

47.     In that correspondence, Avery also demanded a copy of GEVC's internal do-not-call policies.

48.     GEVC failed to provide a copy of its internal do-not-call policies as Avery demanded.

49.     To the extent any consent or business relationship was established in the July 1, 2021 call (where Avery engaged for the sole purpose of identifying the calling party), Avery's subsequent October 2021 letter clearly and unequivocally terminated such consent and/or relationship.

50.     Despite the fact that Avery made it known he did not want any more telemarketing calls from GEVC, the annoying and invasive marketing calls continued.

51.     Specifically, GEVC called Avery's cell phone on at least six instances in November and December 2021 (the dates, times and calling party's number listed in the chart below).

52.     In each of those instances, the calling party promoted its timeshare properties and "vacation club" and described the aforementioned Irving, Texas office. On information and belief, all of the outgoing numbers GEVC used to call Avery were spoofed, and were and are not Defendants' real telephone numbers.

53.     Accordingly, Avery understands GEVC is responsible for those calls.

54.     In March of 2022, Avery wrote another correspondence to GEVC articulating once again that the calls were unlawful.

55.     Despite the *second* demand that the calls cease and desist, GEVC called Avery on July 18, 2022, attempting to schedule an in-person appointment to promote GEVC timeshare properties.

56.     A non-exhaustive list of the offending calls from GEVC, of which Avery is currently aware, is listed below:

| Date: | Caller ID: |
| --- | --- |
| July 1, 2021 | (469) 525-5663 |
| November 7, 2021 | (469) 551-5483 |
| November 7, 2021 | (469) 531-1379 |
| November 15, 2021 | (469) 576-8082 |
| November 15, 2021 | (469) 594-0612 |
| December 7, 2021 | (469) 550-8464 |
| December 7, 2021 | (469) 550-8464 |
| July 18, 2022 | (475) 276-0924 |
| July 18, 2022 | (424) 577-9491 |

July 18, 2022                                    (281) 667-4332

57.    These calls were not made for "emergency purposes," but rather for solicitation purposes.

58.    As a result of the foregoing, Avery experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendants.

59.    The foregoing acts and omissions by Defendants were in violation of the National Do-Not-Call Rules and Internal Do-Not-Call Rules of the TCPA and its corresponding regulations.

## CLASS ALLEGATIONS

60.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Plaintiff seeks to represent the following classes:

**National Do-Not-Call Registry (NDNC) Class:** All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, while such number was registered with the National Do-Not-Call Registry.

**Internal Do-Not-Call Registry (IDNC) Class:** All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, during which time Defendants had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

61.    Excluded from the NDNC and IDNC Classes are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions

consistent with the record.

62.    The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

63.    Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

64.    Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

65.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

66.    Class Members are so numerous that the individual joinder of all class members is impracticable. Plaintiff alleges that there are at least forty members of each class. There are no likely difficulties to be encountered in managing this case as a class action.

67.    Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

    a.    Whether Defendants scrub or otherwise consult the federal Do Not Call registry before calling numbers;

    b.    Whether Defendants have meaningful and enforced internal do-not-call policies and procedures;

    c.    Whether Defendants' conduct violates 47 U.S.C. § 227(c) and

the corresponding rules and regulations implementing the TCPA; and,

    d.    Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

68.    Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing solicitation calls to Plaintiff and the putative class members.

69.    The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

70.    Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

71.    Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

# FIRST CAUSE OF ACTION
## (Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c)

72.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73.    Plaintiff brings this Count individually and on behalf of all others similarly situated.

74.    The TCPA provides that it is a violation of the law for a person whose residential or cellular telephone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

75.    The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

76.    In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls and texts to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

77.    By calling and texting Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. § 227(c)(1) and the TCPA's corresponding regulations.

78.    On information and belief, Defendants and/or their agents routinely make outgoing calls or send texts to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other NDNC Class members. Defendants violated 47 C.F.R. § 64.1200(c).

79.    Defendants' violations are knowing and willful because Defendants knew or should have known that Plaintiff and NDNC Class members had their numbers registered on the Do Not Call Registry.

80.    The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

81.    Plaintiff and NDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

82.    Plaintiff, individually, and on behalf of the other NDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

83.    Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the NDNC Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

## SECOND CAUSE OF ACTION
### (Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d))

84.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

85.    Plaintiff brings this Count individually and on behalf of all others similarly situated.

86.    Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. The TCPA provides a private right of action for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

87.    Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d), (e).

88.     Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendants, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendants, Defendants made two or more calls to Plaintiff, in order to sell their timeshare interests. Defendants continue to make telemarketing calls when they fail to honor consumer requests not to receive calls from or on behalf of Defendants.

89.     Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for

maintaining a do-not-call list, and/or such policy was not available upon demand. Plaintiff requested Defendants' written policy for maintaining a do-not-call list in October 2021, and Defendants never provided one. Defendants continue to make telemarketing calls when they either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

90.      On information and belief, and in addition or the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

91.      Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the individual caller, Defendants' names, and a telephone number at which Defendants could be contacted. Specifically, Defendants' spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their telemarketers fail to identify Defendants until after the telemarketer assesses the call recipients' interest in Defendants' vacation packages.

92.      Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

93.      Defendants violated Plaintiff's rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

94.      Defendants' violations were knowing and willful because they knew

they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

95.    The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

96.    Plaintiff and IDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

97.    Plaintiff, on behalf of himself, and on behalf of the other IDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

98.    Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the IDNC Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff, Jonathan Avery, individually, and/or behalf of all other similarly situated, requests the Court grant the following relief against Defendants Global Exchange Vacation Club and Global Exchange Development Corp., Resort Vacations, Inc., and Does 1 to 10 as follows:

a.    Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b.    Enter an order appointing Preston Law Offices and Kimmel & Silverman, P.C. as class counsel;

c.    Enter judgment in favor of Plaintiff and the NDNC and IDNC Classes for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c), consistent with proof at trial;

d.    Enter a judgment in favor of Plaintiff and the NDNC and IDNC Class that enjoins Defendants from violating the TCPA's regulations in the manner and/or using the means as alleged above and consistent with

proof;

e.     Award Plaintiff and the NDNC and IDNC all expenses of this action, attorneys' fees and costs under California Code of Civil Procedure § 1021.5 in favor of Plaintiff and the NDNC and IDNC Classes, and require Defendants to pay the costs and expenses of class notice and administration; and,

f.     Award Plaintiff and the NDNC and IDNC such further and other relief the Court deems just and appropriate.

Dated: November 3, 2023          By:_____

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* pending)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*

1

## JURY TRIAL DEMAND

2

Plaintiff hereby demands a trial by jury of all issues so triable.

3

Dated: November 3, 2023        By:_____

4

Ethan Preston (263295)
ep@eplaw.us

5

PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310

6

Dallas, Texas 75204
Telephone: (972) 564-8340

7

Facsimile: (866) 509-1197

8

Jacob U. Ginsburg (*pro hac vice* pending)
jginsburg@creditlaw.com

9

teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.

10

30 East Butler Ave.
Ambler, PA 19002

11

Telephone: (267) 468-5374
Facsimile: 215-540-8817

12

13

*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28